UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

NEW ENGLAND TEAMSTERS & TRUCKING
INDUSTRIES PENSION FUND,

                Plaintiff,              14 Misc. 59

    -against-                   AMENDED OPINION

THE NEW YORK TIMES COMPANY,

                Defendant.

------------------------------------X

KARSTEN SCHUH,

                Plaintiff,        Civil Action No.

    -against-                3:11-cv-1033

HCA HOLDINGS, INC.,            M.D. Tenn.

                Defendant.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for the Plaintiff

    ROBBINS GELLER RUDMAN & DOWD LLP
    58 South Service Road
    Melville, NY 11747
    By:  Samuel H. Rudman, Esq.
        Scott H. Saham, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/21/14

Attorneys for the Named Defendant

THE NEW YORK TIMES COMPANY
Legal Department
620 Eighth Ave.
New York, NY 10018
By:  David E. McCraw, Esq.
     D. Victoria Baranetsky, Esq.

**Sweet, D.J.**

Plaintiff New England Teamsters & Trucking Industry Pension Fund ("Plaintiff") has moved this Court, sitting in Part One, to compel named defendant The New York Times Company ("The Times") to produce documents responsive to Plaintiff's subpoena issued on September 11, 2013 (the "Subpoena") in the matter of *Karsten Schuh v. HCA Holdings, Inc.*, Civil Action No. 3:11-cv-01033 (M.D. Tenn.) (the "Tennessee Action" or "Action"). Plaintiff is Lead Plaintiff and The Times is not a party in the Tennessee Action.  Upon the conclusions set forth below, Plaintiff's motion is denied.

**Prior Proceedings**

The Action is a federal securities litigation pending against HCA Holdings, Inc. ("HCA"), several of its officers and directors and the underwriters who underwrote and sold HCA's March 9, 2011 Initial Public Offering (the "IPO") (collectively, the "Tennessee Action Defendants").  The Consolidated Complaint in the Action was filed in the Middle District of Tennessee on July 13, 2012 (the "Consolidated Complaint" or "CC").  Plaintiff seeks certain documents described and quoted in *The New York Times* August 6, 2012 article entitled "Hospital Chain Inquiry

2

Cited Unnecessary Cardiac Work" (the "Article").[1]  Plaintiff
alleges that these documents are crucial evidence necessary for
the prosecution of the Tennessee Action:  The Article details
the performance of improper cardiac procedures at HCA hospitals
as well as the hospital officials' reaction to this information.[2]
The Article is based upon the review of "memos, e-mail
correspondence among executives, transcripts from hearings and
reports from outside consultants."[3]  According to the Article,
"[a] review of those communications reveals that rather than
asking whether patients had been harmed or whether regulators
needed to be contacted, hospital officials asked for information
on how the physicians' activities affected the hospitals' bottom
line."[4]  Plaintiff contends that a central issue in the Tennessee
Action is the impact of the cessation of unnecessary cardiac
procedures on HCA's bottom line.

       The Subpoena seeks the following documents: (1) a 2010
review demonstrating that "about half the procedures, or 1,200,
were determined to have been done on patients without
significant heart disease" (the "2010 Review"); (2) "hospital
officials" communications and/or analysis of how this conduct

---

[1] Reed Abelson & Julie Creswell, Hospital Chain Inquiry Cited Unnecessary
Cardiac Work, THE NEW YORK TIMES, Aug. 6, 2012.
[2] Id.
[3] Id.
[4] Id.

could impact HCA's "bottom line" (the "Bottom Line Documents");
and (3) a "memo written by a company ethics officer," Stephen
Johnson, stating: "The allegations related to unnecessary
procedures being performed in the cath lab are substantiated"
(the "Johnson Memo").[5]

Plaintiff previously sought these documents directly
from HCA in the Tennessee litigation.  HCA has stated that it
does not possess or even know what the 2010 Review is and has no
knowledge of hospital officials analyzing how the cessation of
improper procedures would impact HCA's bottom line.
Subsequently, Plaintiff served the Subpoena on The Times in
September 2013, more than a year after the Article ran, seeking
documents used by the reporters in preparing the Article.  (*See*
Saham Decl. Ex. F).  The Times has objected to the Subpoena and
not produced the documents, citing the reporter's privilege
under *Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 35 (2d
Cir. 1999), and the undue burden of the Subpoena.  (*See* Saham
Decl. Ex. B).

Plaintiff filed the instant motion Part One in this
district on March 11, 2014.  Briefing was submitted, and oral

---

[5] *Id.*

4

arguments were held and the matter was marked fully submitted on
April 8, 2014.

**Allegations In The Consolidated Complaint**

HCA owns, manages and operates hospitals, freestanding
surgery centers and various other facilities.  (CC ¶ 2).  In
early 2011, the Tennessee Action Defendants engaged in the IPO
to take HCA public, and sold more than $4.3 billion of HCA
stock.  (*Id.* ¶ 3).  The Consolidated Complaint alleges the
Tennessee Action Defendants failed to disclose that, among other
things, HCA was experiencing and would continue to experience a
decline in the high margin cardiology revenue components because
it ceased performing certain unnecessary, but highly profitable,
cardiac procedures at its hospital.  (*Id.* ¶¶ 3, 32, 45).

Plaintiff alleges that the Tennessee Action Defendants
knew of HCA's pre-IPO internal investigation of unnecessary
cardiac procedures following a whistleblower complaint and
ensuing investigation.  The Article reported that HCA's own
internal investigation found, by Fall 2010, months before the
IPO, that unnecessary procedures were being performed in HCA's

5

highly profitable cardiology business.[6]  HCA uncovered evidence
showing that "cardiologists at several of its hospitals in
Florida were unable to justify many of the procedures they were
performing."[7]  According to the 2010 Review, which was obtained
by The Times, "about half the procedures, or 1,200, were
determined to be have been done on patients without significant
heart disease."[8]

Plaintiff alleges that as a result of this
investigation, as well as HCA's own internal business reporting,
the Tennessee Action Defendants were aware before the IPO that
the number of highly profitable cardiac procedures being
performed was declining and would continue to negatively impact
HCA's financial performance following the IPO.  (CC ¶¶ 3, 32,
45).  The Tennessee Action Defendants did not disclose this
information to the investing public in connection with HCA's
IPO.

Plaintiff has sought discovery of the documents at
issue in the Subpoena from HCA.  Given the sheer size of HCA
(over 170,000 employees), the Tennessee Action Defendants'

---

[6] Reed Abelson & Julie Creswell, Hospital Chain Inquiry Cited Unnecessary
Cardiac Work, THE NEW YORK TIMES, Aug. 6, 2012.
[7] Id.
[8] Id.

search has been limited to a finite number of documents
custodians.

The Honorable Kevin H. Sharp of the Middle District of
Tennessee is presiding over the Tennessee Action and has
recognized that HCA's internal investigations are important to
Plaintiff's claims as to the Tennessee Action Defendants'
knowledge of material trends at the time of the IPO. *Schuh v.
HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 893 n.4 (M.D. Tenn.
2013).

**The Applicable Standard**

Federal Rules of Civil Procedure 37 permits a party to
move for an order compelling disclosure or discovery from a non-
party to an action. *See* Fed. R. Civ. P. 37(a)(2).  A court must
quash or modify a subpoena that "requires disclosure of
privileged or other protected matter, if no exception or waiver
applies." *See* Fed. R. Civ. P. 45 (d)(3)(iii).

The Second Circuit has recognized a qualified
reporter's privilege, based in the First Amendment and federal
common law, which protects journalists from having to produce
information obtained during the course of newsgathering. *See,*

7

*e.g.*, *Gonzales*, 194 F.3d 29; *In re Petroleum Prods. Antitrust Litig. (Petroleum Prods.)*, 680 F.2d 5, 7-8 (2d Cir. 1982); *Baker v. F & F Inv.*, 470 F.2d 778 (2d Cir. 1972). *See also United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011); *In re McCray, Richardson, Santana, Wise, and Salaam Litig.*, 928 F. Supp. 2d 748, 754 (S.D.N.Y. 2013), *adopted*, No. 03 Civ. 9685 (DAB), 2013 U.S. Dist. LEXIS 31142, at *23 (S.D.N.Y., Mar. 5, 2013); *Sokolow v. PLO*, No. 04 Civ. 397 (GBD) (RLE), 2012 U.S. Dist. LEXIS 127040 (S.D.N.Y. Sept. 6, 2012). The privilege protects both confidential and nonconfidential information. *Gonzales*, 194 F.3d at 35-36. It seeks to prevent the unnecessary enmeshing of the press in litigation that arises from events they cover. *Id.* at 35. "The privilege, which exists to support the press's important public service function to seek and reveal truthful information, protects newsgathering efforts from the burdensome wholesale production of press files that risk impeding the press in performing its duties." *In re McCray*, 928 F. Supp. 2d at 753 (internal citations omitted).

*Gonzales* sets out two tests for invocation of the privilege, one applicable to instances where the sought-after evidence pertains to confidential information and the second applicable to subpoenas where no confidential material is

8

involved.  Under the *Gonzales* test for non-confidential
information, the one relevant here, "the nature of the press
interest protected by the privilege is narrower . . . . when
protection of confidentiality is not at stake, the privilege
should be more easily overcome."  194 F.3d at 36.  Under this
test, a subpoena must be quashed unless the issuing party
demonstrates (1) "that the materials at issue are of likely
relevance to a significant issue in the case," and (2) the
materials at issue "are not reasonably obtainable from other
available sources."  *Id.*

        The first prong of *Gonzales* requires the party seeking
to compel disclosure to demonstrate that the information sought
is of "likely relevance" and goes to a "significant issue" in
the case.  *Id.* at 36; *In re McCray*, 928 F. Supp. 2d at 757-58.
The relevancy requirement is not met if the information sought
in the subpoena is merely duplicative or serving a "solely
cumulative purpose."  *United States v. Burke*, 700 F.2d 70, 78
(2d Cir. 1983).  While "this standard is less exacting than that
which applies to confidential materials, a litigant seeking
nonconfidential materials will not be granted unfettered
access."  *Sikelianos v. City of N.Y.*, No. 05 Civ. 7673, 2008 WL
2465120, at *1 (S.D.N.Y. June 18, 2008).

The second prong of *Gonzales* requires the issuers of
subpoenas to make reasonable efforts through discovery to obtain
the information from alternative sources to defeat the
privilege. *Gonzales*, 194 F.3d at 36.  Exhaustion of all other
available sources of information is sometimes required.  *See,
e.g.*, *Krase v. Graco Children Prods. (In re National
Broadcasting Co.)*, 79 F.3d 346, 353 (2d Cir. 1996) (requiring
that party seeking journalist's materials exhaust alternatives);
*Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) (stating
exhaustion of alternate sources is nearly implausible early in
the discovery process); *Petroleum Prods.*, 680 F.2d at 9 (holding
that even though 100 witnesses had been deposed, that was not
sufficient to establish exhaustion); *Zerilli v. Smith*, 656 F.2d
705, 713 (D.C. Cir. 1981) (requiring subpoenaing party to show
"he has exhausted every reasonable alternative source of
information"); *Carey v. Hume*, 492 F.2d 631, 638 (D.C. Cir. 1974)
(60 depositions may be appropriate before compelling reporter to
testify); *In re McCray*, 928 F. Supp. 2d at 758 ("Defendants have
failed to establish that the information sought is not
obtainable elsewhere"); *Application of Behar*, 779 F. Supp. 273,
276 (S.D.N.Y. 1991) (stating alternate sources, including
depositions, must first be exhausted before any deposition
seeking privileged information would be warranted); *Hutira v.
Islamic Republic of Iran*, 211 F. Supp. 2d 115, 120 n.4 (D.D.C.

10

2002) (failure to exhaust alternative sources weighed "so
heavily in favor of quashing the subpoena" that court declined
to consider the remaining analysis).

**Production of the Documents Requested in the Subpoena Cannot Be
Compelled From The Times at This Time**

Plaintiff seeks three documents from the Times: (1)
the Johnson Memo; (2) the Bottom Line Documents; and (3) the
2010 Review.

*The Johnson Memo*

With regards to the Johnson Memo, the Plaintiff filed
a motion to compel HCA to produce, among other things, the
Johnson Memo in the Tennessee Action on October 21, 2013.
(*Schuh v. HCA*, 11-cv-01033, Dkt. No. 161 (M.D. Tenn.)).  HCA has
claimed the Johnson Memo is privileged.  (*See* Pl. Mem. at 2,
n.3).  The issue remains *sub judice* in the Tennessee Action.

Plaintiff's attempt to open parallel litigation to
obtain the Johnson Memo while the motion to compel is pending in
the Tennessee Action is improper.  Furthermore, until the Middle
District of Tennessee rules on whether HCA is required to

11

produce the Johnson Memo, Plaintiff has failed to demonstrate
that the Johnson Memo is unavailable from another source.   An
alternative source for the document is potentially available in
Tennessee.   Plaintiff's motion with regards to the Johnson Memo
thus cannot be granted.   *See Krase*, 79 F.3d at 353.


*The Bottom Line Documents*


        The Tennessee Action Defendants have indicated that
they are currently searching for and working to produce these
documents.   Given such, the motion with respect to the Bottom
Line Documents must be denied as moot at this time.


*2010 Review*


        HCA has stated that it does not possess or even know
what the 2010 Review is and has no knowledge of hospital
officials analyzing how the cessation of improper procedures
would impact HCA's bottom line.   Counsel for HCA has stated
before the Honorable Juliet E. Griffin, United States Magistrate
Judge of the Middle District of Tennessee, "The New York Times
is describing some other larger review. . . . we have no clue
what it is, we have no idea.   (Saham Decl. Ex. H at 59:11-16).
Consequently, Plaintiff contends that HCA is unable to produce

the 2010 Review, and the document cannot be obtained except from
The Times.

However, Plaintiff has not provided any deposition
testimony from HCA records custodians or Rule 30(b)(6) witness
or interrogatory responses from any HCA witnesses.  HCA's
counsel's statements are unsworn statements by counsel that do
not describe or discuss the type of search HCA has done to
locate the 2010 Review.  The Times has also provided a
declaration detailing two HCA employees who were questioned by
the Times about the 2010 Review for the Article, three HCA
executives involved in creating or reviewing the 2010 Review and
specific details of the document, such as the document's final
date and dates the analysis covered.  (*See* Creswell Decl. ¶¶ 11-
13).  Plaintiff, by its own admission, has not used the
information provided by The Times to compel production of the
2010 Review from HCA or depose the three executives named by The
Times.  HCA has also not conducted a search of its documents
based on the additional information provided by The Times.
Given such, Plaintiff has not made a sufficient showing that the
material is not reasonably obtainable from other available
sources.  *See In re McCray*, 928 F. Supp. 2d at 758 (upholding
privilege where party "fail[ed] to demonstrate that the
information they seek is unavailable from another source").

13

Plaintiff contends that *Gonzales* "does not require that every theoretical source be exhausted," *In re Natural Gas Commodity Litig.*, 235 F.R.D. 199, 216-17 (S.D.N.Y. 2005), and that requesting the 2010 Review from HCA, moving to compel and subsequently raising HCA's failure to produce the documents with the Tennessee magistrate judge meets the Second Circuit standard.  With HCA's professed confusion before the Tennessee Magistrate Judge as to what the 2010 Review is and the additional information about the 2010 Review provided by The Times, Plaintiff has not shown that at this time HCA is unwilling to provide the document and is willing to defy any court orders to do so.  Plaintiff also has not shown that the additional information provided by The Times will not result in the discovery of the report by HCA.  Basing the availability of a document from an alternative source on that source's inability to identify the document would quickly null the reporter's privilege when additional identifying information has been provided.  The hidden assumption in Plaintiff's argument is that HCA is unwilling to hand over the 2010 Review, but this is contradicted by counsel for HCA's confusion on the record about what the 2010 Review is and is unsubstantiated by any sworn depositions or interrogatories.  It is possible that HCA is telling the truth, and further discovery by the company can

14

unearth the document.  Mere belief that an alternative source is
unwilling to provide the information, without more, cannot
compel a finding that information is not reasonably obtainable.
At a minimum, Plaintiff has not shown that the 2010 Review is
not reasonably obtainable from other available sources.  *See*
*Lebowitz v. City of New York*, 948 F. Supp. 2d 392, 394 (S.D.N.Y.
2013) (finding defendant had not demonstrated the information
sought was not reasonably obtainable from other available
sources where three other witnesses identified by the plaintiff
could be questioned about the information).

15

## Conclusion

Based on the conclusions set forth above, Plaintiff's motion to compel is denied without prejudice.

It is so ordered.

New York, NY

April /8, 2014

ROBERT W. SWEET
U.S.D.J.
Part 1

16