UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------

NEW ENGLAND TEAMSTERS &
TRUCKING INDUSTRIES PENSION FUND *et al.*,

        *Plaintiff*,

v.

THE NEW YORK TIMES COMPANY,

        *Defendant.*

------------------------------------------------------------------------

KARSTEN SCHUH,
        *Plaintiff*,

v.

HCA HOLDINGS, INC.,
        *Defendant*.

------------------------------------------------------------------------------

Civil Action No.
3:11-cv-01033
M.D. Tenn.

SDNY No.
14 MISC 00059

**MEMORANDUM OF LAW OF
THE NEW YORK TIMES COMPANY
IN OPPOSITION TO SUPPLEMENTAL
MOTION TO COMPEL**

#58363v5

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................................1

FACTUAL STATEMENT ...............................................................................................................1

ARGUMENT.....................................................................................................................................4

    I.    Plaintiff seeks to use this court as a <u>de</u> <u>facto</u> appeals court in an improper

    attempt to overcome the discovery ruling of the Tennessee court......................................4

    II.   Plaintiff has once again failed to overcome the <u>Gonzales</u> privilege ...........................8

CONCLUSION...............................................................................................................................14

## INTRODUCTION

Non-party The New York Times Company ("The Times") respectfully submits this memorandum of law in opposition to plaintiff's supplemental motion to obtain editorial work product for use in plaintiff's securities class action against HCA Holdings, Inc. ("HCA") in the Middle District of Tennessee.

There is no basis for compelling Times journalists to provide evidence in this matter. First, the court in Tennessee has now ruled that there are alternative sources for the information sought by plaintiff in this action. Under the well-settled law of this Circuit, as recognized by this Court during the parties' first round of motion practice earlier this year, litigants are not entitled to discovery of editorial work product when other sources are available. Plaintiff is required to make a "clear and specific" showing of unavailability. That has not happened – again. Further, the two documents sought here were found to be privileged attorney work product by the Tennessee court in the underlying class action. Plaintiff should not now be permitted to use this Court as a second-bite forum to undo the decision of another district court.

For each of these reasons, the supplemental motion to compel should be denied.

## FACTUAL STATEMENT

It is important to recall the origins of this matter. As part of its ongoing coverage of waste and expense in medical care, The New York Times published an article on August 6, 2012 about unnecessary surgical procedures that were performed at hospitals owned by HCA, a major operator of medical facilities in the United States. (See "Hospital Chain Inquiry Cited Unnecessary Cardiac Work" (the "Article"), Ex. A to

1

#58363v5

Declaration of David E. McCraw, dated December 5, 2014 ("McCraw Dec.").) The
Article was the result of extensive reporting by Times reporters Reed Abelson and Julie
Creswell and was based in part on internal HCA documents provided to them by
anonymous sources to whom they promised confidentiality. (Declaration of Julie
Creswell ("Creswell Dec."), dated March 31, 2014, Ex. B to McCraw Dec., at ¶¶ 3, 4.)

In the midst of the national debate over health care costs, the Article offered the
public an inside look at how wrong things can go at a hospital system driven by bottom-
line concerns. The Article recounted how patients were subjected to medical procedures
that they did not need, and, when told of the wrongful practices, executives at HCA
turned a blind eye, concerning themselves instead with finances and profit margins.

At the time of the Article, plaintiff was already involved in a securities class
action against HCA in the Middle District of Tennessee. (See Karsten Schuh v. HCA
Holdings, Inc., Civil Action No. 3:11-cv-01033 (M.D. Tenn.) (the "Tennessee Action").)
In September of 2013, more than a year after the Article ran, plaintiff in that underlying
securities-fraud case served a subpoena (the "Subpoena") on The Times seeking
documents used by the reporters in preparing the Article. (See Ex. F to Declaration of
Scott Saham, dated March 10, 2014 ("Saham Dec.") (Docket No. 3).) The Times timely
objected to the Subpoena, citing the reporter's privilege as enunciated in Gonzales v.
National Broadcasting Co., 194 F.3d 29, 35 (2d Cir. 1999), and the undue burden of the
Subpoena. (See Ex. B to Saham Dec.)

After negotiations between counsel resolved some but not all issues, plaintiff filed
a motion to compel on March 11, 2014, limiting the materials sought to three categories
of documents. (See Memorandum of Points and Authorities in Support of Motion to

2

#58363v5

Compel Third-Party The New York Times Company to Produce Documents Responsive
to Plaintiff's Subpoena, dated March 11, 2014 ("Pl. Mem.") (Docket No. 2), at 1-2.) This
Court, after a full briefing and oral argument, denied the motion to compel, finding that
plaintiff had not exhausted alternative sources. (See Amended Opinion, dated April 21,
2014 ("April Opinion") (Docket No. 19).) The Court noted that plaintiff had failed to
provide deposition testimony or other evidence from discovery to make the requisite
"clear and convincing" showing that the information sought was not available elsewhere.
(Id. at 12-16.) The Court also noted that the court in Tennessee had before it at that time
a motion to compel that dealt with some of the same materials. (Id. at 12.) The Court
recognized the right of plaintiff to renew its motion to compel after further discovery and
the anticipated ruling by the Tennessee court if the information sought was still not
available. (Id. at 12-13, 17.)

On November 12, 2014, plaintiff filed the supplemental motion to compel that is
now before this Court. Only two documents remain at issue. The first is an internal
memorandum written by an HCA ethics officer, Stephen Johnson, substantiating a
nurse's allegations that unnecessary procedures were being performed at Lawnwood
Regional Medical Center ("Lawnwood"), an HCA facility in Florida (the "Johnson
Memo"). (See Article, Ex. A. to McCraw Dec., at 1.) Second, the supplemental motion
seeks a 2010 internal HCA review (the "2010 Review") showing that some 1,200
surgeries were performed on patients who did not have serious heart disease at
Lawnwood. (Id. at 2.)

The crux of plaintiff's argument is that the Gonzales privilege should be set aside
because the two documents are not available from HCA. More specifically, plaintiff

3

points out that HCA has withheld the Johnson Memo because it is privileged (as found by the Tennessee Court) and that HCA witnesses testified they were unable to identify "precise[ly]" the 2010 Review from its description by The Times in the Article and in its earlier submissions to this Court. (See Memorandum of Points and Authorities in Support of Supplemental Motion to Compel The New York Times Company to Produce Documents Responsive to Plaintiff's Subpoena, dated November 12, 2014 ("Supp. Pl. Mem.") (Docket No. 29) at 3-4, 7; see also Exs. A, H to Declaration of Scott H. Saham in Support of Supplemental Motion to Compel The New York Times Company to Produce Documents Responsive to Plaintiff's Subpoena, dated November 12, 2014 ("Second Saham Dec.") (Docket No. 30).)

## ARGUMENT

### I

### PLAINTIFF SEEKS TO USE THIS COURT AS A DE FACTO APPEALS COURT IN AN IMPROPER ATTEMPT TO OVERTURN THE DISCOVERY RULING OF THE TENNESSEE COURT

Before even getting to The Times's privilege argument, the Court should consider the real import of plaintiff's latest motion. On November 12, 2014, Judge Griffin of the Middle District of Tennessee upheld HCA's claim of privilege for more than 800 documents. (See Ex. H to Second Saham Dec.) Significantly, HCA asserted that the "2010 investigation [at Lawnwood] and the Stephen Johnson memo" were covered by the work product privilege." (Id. at 8.) Plaintiff argued that the privilege had been waived because the documents were provided to The Times. (Id. at 17.) The court rejected that

4

#58363v5

argument, finding that HCA had not authorized the release to the Times reporters and that the company had taken appropriate steps to protect its privilege. (Id. at 17-18.)[1] The court also carefully considered whether plaintiff had shown a need for the documents that would permit the court to find that the work product privilege should be set aside. (Id. at 16.) The court concluded that plaintiff had failed to carry its burden because the information was available through other discovery mechanisms. (Id.) ("It is not clear to the Court that the information sought by the plaintiff is crucial to a cogent presentation of her theory of the case. However, even if the plaintiff has adequately shown a substantial need for the documents, the Court finds that the plaintiff has not shown an inability to obtain the information elsewhere.")

There is no question that the Johnson Memo is subject to the Tennessee court's privilege ruling, and plaintiff concedes as much. (See Supp. Pl. Mem. at 7.) ("On September 16, 2014, the Tennessee court ruled that the documents on HCA's privilege log, including what may be the Johnson Memo, were privileged and that HCA would not be required to produce such documents to Plaintiff.")

It is also clear that the 2010 Review falls within the work product privilege, despite HCA's puzzling and inconsistent representation to this Court that HCA does not yet know whether it is. (See Letter of Christian Word to the Court, dated December 2, 2014.) Concededly, at the time of the April Opinion, there was a question as to whether the 2010 Review was among the materials to which HCA was claiming privilege. Those questions have been resolved. In the Tennessee action, HCA asserted that documents

---

[1]     While the Court noted that HCA did not know all the documents that were provided to The Times, the Court found that the Johnson Memo and documents from the 2010 Lawnwood

#58363v5

arising from the investigation of unnecessary cardiac procedures at Lawnwood following the complaints by a nurse, C.T. Tomlinson, were broadly encompassed by the attorney work-product privilege. (See, e.g., HCA's Opposition to Plaintiff's Motion to Compel in Tennessee Action (Ex. C to McCraw Dec.) at 2 ("HCA has repeatedly informed Lead Plaintiff that the vast majority of documents related to the internal investigation of C.T. Tomlinson's allegations are protected by the attorney-client privilege and work product. HCA took Mr. Tomlinson's claims seriously, and the internal investigation was conducted at the direction of, and under the direct supervision of, HCA's legal department with the assistance of outside counsel."); id. at 6 ("But for Mr. Tomlinson's complaint about this potential wrongdoing, HCA's legal department would not have been involved, the investigation would not have occurred, and none of the documents appearing on the privilege log would have been created."); id. at 9 ("Tomlinson's allegations created the prospect of litigation, and without them, the internal investigation would not have occurred." (emphasis in original).) The Tennessee court found that documents from that 2010 investigation fell within the privilege. (See Ex. H to Second Saham Dec. at 13-15.)  While HCA witnesses said they did not know which "precise" document was being labeled the 2010 Review (Ex. A to Second Saham Dec. at 3), The Times has confirmed that the document was created as part of the 2010 investigation of Lawnwood. (See McCraw Dec. ¶¶ 2-3.) [2]

_____

investigation had been given to The Times and fell within privilege. (See Ex. H to Second Saham Dec. at 7, 16.)

[2]     The 2010 Review was done by George Ebra, a consultant, according to Ms. Creswell's sources. (McCraw Dec. ¶ 2.)  HCA counsel has informed The Times that Ebra's review of cardiac procedures from 2010 was part of the privileged Lawnwood investigation. (Id. at ¶ 3.)

6

Had the Tennessee court not addressed the status of the two documents in the
hands of The Times or ruled on plaintiff's lack of need for the documents, it would be
appropriate for this Court to step in make an original determination. But that is not the
case here. The judge actually supervising the discovery in the underlying case has ruled,
and this Court should not intervene with a ruling that would effectively nullify the other
court's ruling, thereby giving plaintiff a de facto appeal. District courts recognize a
comity between districts that dictates restraint when another district is addressing the
same matter. See Schauss v. Metals Depository Corp., 757 F.2d 649, 654 (5th Cir. 1985)
("the important principle of comity between federal courts is advanced where courts of
coordinate rank are respectful of each other's orders, as well as careful to avoid hindering
each other's proceedings"); see also In re Wobben Props. GmbH, No. 1:14-mc-00077-
MSK-KMT, 2014 U.S. Dist. LEXIS 142567 at *5 (D. Colo. Oct. 7, 2014) ("Federal
courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must
be careful to avoid interfering with each other's affairs in order 'to avoid the waste of
duplication, to avoid rulings which may trench upon the authority of sister courts, and to
avoid piecemeal resolution of issues that call for a uniform result.'" (quoting Buzas
Baseball, Inc. v. Bd. Of Regents of Univ. Sys. Of Georgia, 189 F.3d 477 (10th Cir.
2009))); Shelby Am. Auto. Club v. Carroll Shelby Licensing, Inc., No. 08-10131-RGS,
2008 U.S. Dist. LEXIS 44107 at *5 (D. Mass. June 5, 2008) ("'Federal courts of
coordinate rank . . . owe each other comity in the sense of respecting each other's orders
and avoiding hindering each other's proceedings.'" (quoting Smith v. Securities and
Exchange Comm'n, 129 F.3d 356, 361 (6th Cir. 1997) (emphasis omitted))).

7

#58363v5

## II.

## PLAINTIFF HAS ONCE AGAIN FAILED
## TO OVERCOME THE GONZALES PRIVILEGE

The qualified reporter's privilege is based in the First Amendment and federal common law and limits the circumstances under which journalists can be compelled to produce information obtained during the course of newsgathering. See, e.g., Gonzales, 194 F.3d 29; In re Petroleum Prods. Antitrust Litig. (Petroleum Prods.), 680 F.2d 5, 7-8 (2d Cir. 1982); Baker v. F & F Inv., 470 F.2d 778 (2d Cir. 1972); see also United States v. Treacy, 639 F.3d 32, 42 (2d Cir. 2011); Chevron Corp. v. Berlinger, 629 F.3d 297, 306 (2d Cir. 2011); In re McCray, 928 F. Supp. 2d 748, 754 (S.D.N.Y. 2013), adopted, No. 03 Civ. 9685 (DAB), 2013 U.S. Dist. LEXIS 31142, at *23 (S.D.N.Y., Mar. 5, 2013); Sokolow v. PLO, No. 04 Civ. 397 (GBD) (RLE), 2012 U.S. Dist. LEXIS 127040 (S.D.N.Y. Sept. 6, 2012). The privilege protects both confidential and nonconfidential information. Gonzales, 194 F.3d at 35-36.

Only nonconfidential information is at issue here. Under the Gonzales test for nonconfidential information, a subpoena must be quashed, or a motion to compel denied, unless the issuing party demonstrates (1) that the information or materials sought are "of likely relevance to a significant issue in the case," and (2) "not reasonably obtainable from other available sources." Id. at 36.

The privilege is designed to prevent reporters from becoming enmeshed in litigation that arises from the events that they cover. As the Second Circuit explained in Gonzales, "If the parties . . . were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been

8

the subject of press attention to sift through press files in search of information supporting their claims." Id. at 35. That, the court said, would be unacceptable because the "resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could impair its ability to perform its duties – particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation." Id. at 35.

The Second Circuit went on to note a further danger that arises from allowing litigants free access to journalists as witnesses or fonts of evidence: "the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." Id. at 35; see also United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980); United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988); Shoen v. Shoen, 48 F.3d 412, 414 (9th Cir. 1995); Tripp v. Dep't of Defense, 284 F. Supp. 2d 50, 54 (D.D.C. 2003); In re Subpoena to Goldberg, 693 F. Supp. 2d 81, 85 (D.D.C. 2010); Lebowitz v. City of New York, 948 F. Supp. 2d 392, 394 (S.D.N.Y. 2013).

Consistent with those purposes, the Second Circuit has required that the parties issuing subpoenas to journalists must make a "clear and specific showing" of their basis for setting aside the privilege. Gonzales, 194 F.3d at 31 (citing United States v. Cutler, 6 F.3d 67, 71 (2d Cir. 1993)); see also In re Natural Gas Commodities Litig., 235 F.R.D. 241, 244 (S.D.N.Y. 2006).

As an initial matter, it is plain that the information sought remains potentially available in the Tennessee action because plaintiff has filed a motion to reconsider

9

#58363v5

challenging the privilege ruling, and that motion remains pending. (See Supp. Pl. Mem. at 2, n.2.) Put bluntly, plaintiff once more is coming here and creating parallel litigation – a strategy this Court found improper in April. (See April Opinion at 11-12.) ("Plaintiff's attempt to open parallel litigation to obtain the Johnson Memo while the motion to compel is pending in the Tennessee Action is improper. Furthermore, until the Middle District of Tennessee rules on whether HCA is required to produce the Johnson Memo, Plaintiff has failed to demonstrate that the Johnson Memo is unavailable from another source. An alternative source for the document is potentially available in Tennessee."). [3] As a potential alternative source exists for this information, the instant motion to compel should be denied on this ground alone.

But even if that were not so, plaintiff's new attempt to demonstrate that it has exhausted alternate sources still fails. First, plaintiff cites deposition testimony and interrogatory responses indicating that HCA witnesses could not identify the "precise" document possessed by The Times from The Times's description of it. (See Supp. Pl. Mem. at 3-7; Exs. A, C, E, F, G to Second Saham Dec.) Second, plaintiff points out that the Tennessee court refused to order HCA to produce privileged materials, including the Johnson Memo and materials from the 2010 Lawnwood investigation. (See Supp. Pl. Mem. at 7; Ex. H to Second Saham Dec. at 19.)

What plaintiff fails to mention is what the Tennessee court had to say about alternate sourcing. That court was asked to consider whether plaintiff's need for the information contained in the privileged material was such that the work product privilege

---

[3]     While this Court, in its April Opinion, discussed the Tennessee Action's privilege considerations mainly in the context of the Johnson Memo, the opinion also applies to the

10

#58363v5

should be eviscerated. (Ex. H to Second Saham Dec. at 16.) The court held: "[T]he court finds that the plaintiff **has not shown an inability to obtain the information elsewhere**." (Id. (emphasis added).) The court continued: "It is the defendant's position that the information the plaintiff seeks can, by in large, be discovered through deposition testimony. . . . [P]laintiff's counsel can ask witnesses what information they received about the investigation, when they received it, and what they did about it." (Id.)

The Tennessee court properly recognized that the relevant issue for its privilege analysis, and equally relevant to an analysis of the reporter's privilege, is not the documents themselves but the information they contain. Under Gonzales, this Court's analysis should focus on the information sought, not on the form in which it might be obtainable. Gonzales itself implicitly makes that point. At issue were video outtakes from TV journalists of an arrest. 194 F.3d at 31, 36. The Second Circuit weighed whether deposition testimony about the arrest would be the equivalent of the video footage and concluded that "the outtakes contain **information** that is not reasonably obtainable from other available sources" because of the unique and unreproducible contextual nature of video evidence. Id. at 36 (emphasis added). By contrast, this is a case about whether the written facts in straightforward documents can be obtained from the oral testimony of those who participated in the Lawnwood investigation, as the Tennessee court found.[4]

The essential fact that plaintiff seeks from the 2010 Review is whether, as the Article stated, "about half the procedures, or 1,200, were determined to have been done

_____

2010 Review, which is another one of the documents subject to the privilege ruling in Tennessee. (See McCraw Dec. ¶ 3.)

11

on patients without significant heart disease." (See Ex. A to McCraw Dec. at 2.)
Plaintiff fails to show whether it has obtained equivalent evidence of that unnecessary
surgery from interrogatories, depositions, or document discovery.  Similarly, the essential
finding from the Johnson Memo is, as the Article states, Johnson's conclusion that the
"allegations related to unnecessary procedures being performed in the cath lab are
substantiated."  (Id. at 1.)  And, again, plaintiff provides no evidence to show what other
discovery has revealed about Johnson's investigation.  In light of the holding by the
Tennessee court that plaintiff was free to pursue discovery about the Lawnwood
investigation through depositions and that such discovery was a reasonable alternative to
the documents sought here, plaintiff's failure to make that showing is both telling and
fatal to its motion.  The motion should be denied on that basis alone.[5]

But plaintiff has also failed to overcome the other prong of Gonzales: The party
seeking to compel disclosure must demonstrate that the information sought is both of
"likely relevance" and goes to a "significant issue" in the case.  Gonzales, 194 F.3d at 36;
McCray, 928 F. Supp. 2d at 757-58.  The Tennessee court in considering HCA's
privileged documents, including the two at issue here, noted: "It is not clear to the Court
that the information sought by the plaintiff is crucial to a cogent presentation of her
theory of the case."  (Ex. H to Second Saham Dec. at 16.)  Plaintiff has done nothing in
this Court to show why the Tennessee court was wrong in that assessment.  And it is

---

[4]     For instance, the author of the 2010 Review, George Erba, was subpoenaed in the
Tennessee action.  (McCraw Dec. ¶ 4.)
[5]     Plaintiff is not helped by claiming it wants to see other information beyond those core
facts contained in the documents.  It would need to meet both prongs of the Gonzales test as to
any further information it wanted, and it has not done so.

12

important to recall that <u>Gonzales</u> imposes not just a relevancy test but also a significance test.[6]

Further, courts have read that relevancy requirement to mean a subpoena must be quashed if the information is merely duplicative or serving a "solely cumulative purpose." <u>United States v. Burke</u>, 700 F.2d 70, 76 (2d Cir. 1983). In <u>McCray</u>, for instance, defendants sought to meet the relevancy requirement by arguing that the subpoenaed evidence (outtakes from a documentary) went to plaintiffs' credibility even though defendants had prior sworn testimony raising doubts about credibility. 928 F. Supp. 2d at 757-58. The court quashed the subpoena because, far from being significant, "any statements contained in the outtakes would be cumulative." <u>Id.</u>; <u>see also</u> <u>Burke</u>, 700 F.2d at 78 (noting that because of existing evidence, the district court properly concluded that subpoenaed Sports Illustrated work papers would be cumulative); <u>Bradosky v. Volkswagon of Am., Inc.</u>, No. M8-85 (SWK), 1988 U.S. Dist. LEXIS 571, at *8 (S.D.N.Y. Jan. 15, 1988) ("even assuming that the specific statements contained in the outtakes would be useful to defendants for impeachment purposes, their usefulness would only be cumulative").

Because plaintiff has failed to disclose and discuss what evidence it has collected in discovery about the Johnson investigation and the review at Lawnwood, it is impossible to do the cumulativeness analysis. This burden falls squarely on plaintiff as the party seeking to overcome the privilege and the party in control of the requisite

---

[6]    Plaintiff inaccurately asserts that this Court has already found the two documents relevant. (<u>See</u> Supp. Pl. Mem. at 2, n. 3.) In its April Opinion, this Court simply observed that the court in the Tennessee Action recognized that, as a general matter, "HCA's internal investigations are important to Plaintiff's claims as to the Tennessee Action Defendants' knowledge of material trends at the time of the IPO." (<u>See</u> April Opinion at 8.) Whether any

13

#58363v5

information. Plaintiff has failed to make the necessary showing. For that reason, too, the

motion should be denied.

## CONCLUSION

For the reasons set forth above and in The Times's prior submissions in this

action, this Court should deny the supplemental motion to compel, quash the Subpoena

and grant such other and further relief as it deems just and proper.

Dated: New York, New York
        December 5, 2014

Respectfully submitted,

/s/
_____

David E. McCraw, Esq.
Jeremy Kutner, Esq.
Legal Department
The New York Times Company
620 Eighth Ave.
New York, NY 10018
mccraw@nytimes.com
Phone: (212) 556-4031
Fax: (212) 556-1009

Attorneys for Non-Party
The New York Times Company

---

given document from an investigation is relevant presents a different question, and it is this
particularized consideration that is pertinent to to the Gonzales analysis.

14

#58363v5